UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IDEAL PROTEIN OF AMERICA, INC.,

    Plaintiff,

v.                                    Case No. 8:19-cv-654-T-33CPT

ALLIFE CONSULTING, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Allife Consulting, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, or Motion to Transfer Venue (Doc. # 24), filed on April 22, 2019. Plaintiff Ideal Protein of America, Inc. responded in opposition on May 28, 2019. (Doc. # 35). For the reasons that follow, the Motion is denied.

**I.**    **Background**

On December 11, 2014, Ideal Protein and Allife entered into a regional development consultant agreement. (Doc. # 1-1 at 1). The parties mutually agreed to renew the agreement, and then it was eventually decided the agreement would automatically renew for a one-year term beginning on January 15, 2019. (Doc. # 8 at 3-4).

That agreement contains the following forum selection clause:

> This Agreement shall be governed by and interpreted, construed and performed exclusively in accordance with the internal laws in force in the State of Florida, United States of America, without reference to or application of local rules of conflict of laws, and [Allife] hereby submits to and acknowledges that the exclusive jurisdiction of the courts of the State of Florida presiding in the county where [Ideal Protein's] offices are located in the event of any disagreement with respect to the application or interpretation of this Agreement.

(Doc. # 8-1 at 17).

Ideal Protein initiated this case in Florida state court on February 20, 2019, seeking a declaratory judgment that Ideal Protein may terminate the agreement. (Doc. # 1-1). Allife removed the case to this Court on March 18, 2019. (Doc. # 1).

Subsequently, Ideal Protein moved to remand the case, arguing that the forum selection clause requires the case be litigated in Florida state court and that Allife has not established the amount-in-controversy by a preponderance of the evidence. (Doc. # 14). The Court denied that motion, determining the forum selection clause was ambiguous and permitted litigation in federal court in Florida and holding

that the amount-in-controversy requirement was met. (Doc. # 21).

Now, Allife has filed the instant Motion, seeking dismissal for lack of personal jurisdiction or, alternatively, transfer to the Northern District of Illinois. (Doc. # 24). With the Court's permission, Allife filed a supplemental declaration of its principal, Michael Johnson, in support of the Motion on April 30, 2019. (Doc. # 30). Ideal Protein has responded to the Motion (Doc. # 35), and attached the declaration of its Vice President of Legal Affairs, Rico Toffoli, regarding the parties' contacts with Florida and their contract negotiations. (Doc. # 35-1). The Motion is ripe for review.

## II. **Personal Jurisdiction**

First, Allife argues this case should be dismissed because the Court does not have personal jurisdiction over it. (Doc. # 24 at 4-16).

"This Court has jurisdiction over a nonresident defendant if (1) jurisdiction is authorized by Florida's 'long-arm' statute; and (2) the exercise of jurisdiction over the defendant does not violate the Fourteenth Amendment's Due Process Clause." Office Depot, Inc. v. Pelletier, No. 16-81170-CIV, 2016 WL 10932510, at *3 (S.D. Fla. Sept. 8, 2016).

3

## A. Florida's Long-Arm Statute

In 1987, the Florida Supreme Court explained that "the legislature has set forth in our long arm statute the policy of this state concerning when Florida courts can exercise in personam jurisdiction over non-resident defendants. Conspicuously absent from the long arm statute is any provision for submission to in personam jurisdiction merely by contractual agreement." McRae v. J.D./M.D., Inc., 511 So. 2d 540, 543 (Fla. 1987).

But "[s]uch a provision is no longer conspicuously absent." Corp. Creations Enters. LLC v. Brian R. Fons Attorney at Law P.C., 225 So. 3d 296, 301 (Fla. 4th DCA 2017). "[A]fter McRae was decided, the legislature enacted [S]ections 685.101 and 685.102, Florida Statutes, which allow Florida courts to exercise personal jurisdiction in certain circumstances not otherwise provided for under Florida's long-arm statute." Id. "When [S]ections 685.101 and 685.102 are satisfied, personal jurisdiction may be exercised and the courts may dispense with the more traditional minimum contacts analysis." Id.; see also Medytox Diagnostics, Inc. v. Samuels, No. 14-CIV-20719, 2014 WL 12606310, at *5 (S.D. Fla. July 18, 2014)("Based on the Purchase Agreement and section 685.102,

4

Samuels is subject to personal jurisdiction in this District irrespective of his actual contacts with Florida.").

"In other words, [S]ections 685.101 and 685.102 allow parties to confer jurisdiction on the courts of Florida by contract alone if certain requirements are met." <u>Corp. Creations Enters. LLC</u>, 225 So. 3d at 301. Based upon the statutes and relevant case law, in order for a Florida court to exercise personal jurisdiction over a non-resident pursuant to Sections 685.101 and 685.102, the contract must:

> (1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;
> (2) Include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida;
> (3) Involve consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;
> (4) Not violate the United States Constitution; and
> (5) Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

<u>Id.</u>

Allife argues that the Complaint fails to satisfy Florida's long-arm statute because "the Complaint fails to allege any facts suggesting that hailing Allife into a Florida court does not violate the United States Constitution." (Doc. # 24 at 5). Thus, Allife is only challenging the fourth

5

jurisdictional element required by Sections 685.101 and 685.102.

Here, regarding the fourth element, the Complaint alleges that the agreement "does not violate the United States Constitution." (Doc. # 1-1 at 2). Allife insists this allegation is insufficient to establish a prima facie case of jurisdiction, and furthermore, that the declaration of Johnson establishes that the agreement — and its forum selection clause — violate the Constitution. (Doc. # 24 at 7, 12).

The Court disagrees and finds the Complaint sufficiently alleges a prima facie case of personal jurisdiction under Sections 685.101 and 685.102. Still, the Court will address whether the forum selection clause actually violates the United States Constitution in greater depth below.

**B.     Due Process Clause**

Allife dedicates a large portion of its Motion to discussing whether it has sufficient minimum contacts with Florida, which is part of the usual due process analysis. (Doc. # 24 at 5-11).

But "[b]ecause the nonresident defendant in the present case contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done."

6

Alexander Proudfoot Co. World Headquarters v. Thayer, 877 F.2d 912, 921 (11th Cir. 1989). Indeed, the Supreme Court has noted that the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 473 n. 14 (1985). Quite simply, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704 (1982)(quoting Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964)). "The enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust." Alexander Proudfoot Co. World Headquarters, 877 F.2d at 921.

Allife also argues the forum selection clause offends due process because it was not "freely negotiated." (Doc. # 24 at 11-12). Allife is incorrect and, furthermore, misrepresents this Court's Order denying Ideal Protein's motion to remand. The Court never "adopted" Allife's position that the forum selection clause was not "freely negotiated." (Id. at 12). Rather, in determining who was the drafter of the forum selection clause, the Court noted that Allife did not draft the language of the forum selection clause or

7

negotiate that language when Ideal Protein presented it with the draft agreement. (Doc. # 21 at 7). This finding was relevant to determining how the ambiguous forum selection clause should be interpreted and whether it could be construed against the drafter. The Court never addressed whether the forum selection clause was "freely negotiated" as the term is used in the due process analysis.

The fact that Allife did not jointly draft or negotiate the language of the forum selection clause with Ideal Protein does not mean the forum selection clause is not "freely negotiated" or is unreasonable. Nor does the Court find it significant that Allife was presented with the agreement "as a 'take it or leave it' opportunity." (Doc. # 20-1 at 2). If the Court were to adopt Allife's position, then every forum selection clause that was not jointly drafted would be without force, regardless of whether the non-drafting party freely entered the agreement. This is not the law.

"A forum selection clause does not become unenforceable simply because it is part of an adhesion contract." Smith v. Prof'l Claims, Inc., 19 F. Supp. 2d 1276, 1280 (M.D. Ala. 1998); Eisaman v. Cinema Grill Sys., Inc., 87 F. Supp. 2d 446, 450 (D. Md. 1999)("The fact that a forum-selection clause is part of a form contract presented by a party with superior

bargaining power on a 'take-it or leave-it' basis does not render the clause unenforceable."). The Supreme Court has even enforced a forum selection clause printed in a cruise ticket contract — a form contract entered into by regular consumers rather than business entities. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 591-95 (1991). Indeed, many courts have found forum selection clauses satisfied due process even where only one party drafted the forum selection clause. For example, in Office Depot, the exercise of personal jurisdiction in Florida over an out-of-state former employee did not offend due process even though the forum selection clause was in an "Associate Non-Competition, Confidentiality and Non-Solicitation Agreement" that all employees were required to sign. Office Depot, Inc., 2016 WL 10932510, at *2-4.

Unlike the cruise-goer and former employee in those cases, Allife is — at least somewhat of — a sophisticated business entity. And the Court finds that Allife freely negotiated the agreement, which is not a true contract of adhesion. See Liles v. Ginn-La W. End, Ltd., 631 F.3d 1242, 1246-47 (11th Cir. 2011)(finding "that the contracts at issue were freely negotiated" because "[a]lthough the forum-selection clauses, and indeed the entire contracts, are

nearly identical, there [was] no indication from Plaintiffs that they were not the product of free negotiation" and the "contracts concerned sophisticated real estate transactions involving large sums of money — Plaintiffs' purchase prices ranged from $525,900 (Van) to $1,370,900 (Webb)"); see also Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759, 762 (7th Cir. 2006)(rejecting the plaintiff's argument that a contract to distribute the defendant's products was an adhesion contract because it was "a somewhat sophisticated business deal . . . worth more than $100,000").

While it did not actively negotiate the forum selection clause, Allife freely chose to enter into the agreement provided by Ideal Protein — an agreement under which Allife received hundreds of thousands of dollars. See Samson Plastic Conduit & Pipe Corp. v. Battenfeld Extrusionstechnik GMBH, 718 F. Supp. 886, 891 (M.D. Ala. 1989)("The fact that a particular contractual provision may not have been specifically discussed does not preclude it from being enforceable as part of a freely negotiated contract."); see also Aviation One of Fla., Inc. v. Clyde & Co., LLP, No. 6:13-cv-1243-Orl-41DAB, 2016 WL 4494459, at *3 (M.D. Fla. Aug. 26, 2016)("[T]here is a difference between 'not negotiated' — where the parties simply do not alter the terms of a contract

but could have if so inclined — and 'non-negotiated' — where one party does not have the ability to alter the terms of the contract."), aff'd sub nom. Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd, 722 F. App'x 870 (11th Cir. 2018). There is no evidence that it is unreasonable to enforce the agreement Allife chose, as there is no evidence that Allife was in a vulnerable position or under duress, or that Ideal Protein exercised undue influence over Allife. See Samson Plastic Conduit & Pipe Corp., 718 F. Supp. at 891 ("There is no evidence that either Samson or Batex was at a disadvantage or in a vulnerable position during the forming of the contract; neither is there evidence of duress or undue influence. Rather, Samson and Batex were both practiced business entities in reasonably equal bargaining positions.").

Nor does the Court find that the forum selection clause is fundamentally unfair or that exercising jurisdiction over Allife would not comport with fair play and substantial justice. "[T]here is no indication that [Florida] [was] designated in a bad-faith attempt to discourage [Allife] from pursuing legitimate claims against [Ideal Protein]. Rather, [this forum was] selected because [Ideal Protein's] principal place of business is in [Florida]." Eisaman, 87 F. Supp. 2d

11

at 451. And Allife's assertion that being forced to litigate in Florida contravenes fair play and substantial justice because Allife "never expected to be hailed into court" here is disingenuous. (Doc. # 24 at 14). Allife signed an agreement in which it agreed that Florida courts would be the exclusive forum for litigating any disputes and did not attempt to renegotiate the forum selection clause when the agreement was renewed. (Doc. # 35-1 at 7). Therefore, Allife had every reason to expect litigation to occur in Florida.

In short, the usual due process analysis is unnecessary, so the Court will not scrutinize Allife's minimum contacts with Florida as Allife requests. The Court finds that it may exercise personal jurisdiction over Allife because the forum selection clause does not offend due process. Allife's Motion is denied to the extent it seeks dismissal for lack of personal jurisdiction.

### III. <u>Transfer of Venue</u>

Alternatively, Allife argues that the case should be transferred to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1404(a). (Doc. # 24 at 16-21).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Ordinarily, "[t]o transfer an action under [S]ection 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." i9 Sports Corp. v. Cannova, No. 8:10-cv-803-T-33TGW, 2010 WL 4595666, at *3 (M.D. Fla. Nov. 3, 2010)(citation omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 63 (2013)(citation omitted). "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. (citation omitted). So, the Court "should not consider arguments about the parties' private interests." Id. at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. "A court accordingly must

13

deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. "A district court may only consider arguments regarding public-interest factors." Loeffelholz v. Ascension Health, Inc., 34 F. Supp. 3d 1187, 1190 (M.D. Fla. 2014).

Before applying the modified Section 1404(a) analysis, the Court must ensure that the forum selection clause is valid. See Smith v. Oasis Legal Fin., LLC, No. 8:17-cv-2163-T-33JSS, 2017 WL 4922271, at *3 (M.D. Fla. Oct. 31, 2017)("The Atlantic Marine analysis 'presupposes a contractually valid forum selection clause.' Therefore, the Court must determine whether the forum selection clause is, in fact, valid." (citation omitted)). "A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009). "In determining whether there was fraud or overreaching in a non-negotiated forum-selection clause, we look to whether the clause was reasonably communicated to the [moving party]." Id.

14

Also, "[b]eyond validity, in analyzing the application of a forum-selection clause a court must determine whether the claim or relationship at issue falls within the scope of the clause — by looking to the language of the clause itself — and whether the clause is mandatory or permissive." Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc., No. 14-CIV-61550, 2014 WL 4681006, at *4 (S.D. Fla. Sept. 19, 2014).

The Court finds that the forum selection clause is valid for the same reasons discussed in the previous section. There is no evidence of fraud or overreaching. Nor would Allife be deprived its day in court. Furthermore, the forum selection clause does not contravene public policy. Additionally, the dispute at issue — whether the agreement may be terminated because of alleged defaults by Allife — falls within the scope of the mandatory forum selection clause.

So, the modified Section 1404(a) analysis is appropriate and the Court need only analyze the public-interest factors to determine whether they favor transfer to the Northern District of Illinois. These public-interest factors "include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with

15

the law.'" Atl. Marine, 571 U.S. at 62 n.6 (citation omitted). Nevertheless, the Supreme Court has cautioned that public-interest factors "will rarely defeat" a motion to enforce a valid forum selection clause. Id. at 582. The party opposing venue in the forum specified in the forum selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor" litigating the case in the forum set by the forum selection clause. Id. at 583 ("As the party acting in violation of the forum-selection clause, [the plaintiff] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer.").

Here, Allife has not met its burden of establishing that the public-interest factors weigh against litigating the case in this Court. As an initial matter, the Court notes that Allife's Motion does not directly address the Atlantic Marine public-interest factors. Indeed, the Motion does not cite Atlantic Marine at all — a grave oversight.

Nevertheless, Allife's discussion of certain factors considered in the typical Section 1404(a) analysis, used when there is no forum selection clause, touch on the same concerns as the Atlantic Marine public-interest factors. For example, Allife argues that the "trial efficiency" factor weighs in favor of transfer. (Doc. # 24 at 21). Yet, even in making

16

that argument, Allife admits that "the average time from filing to trial is faster in the Middle District of Florida than the Northern District of Illinois," which weighs against transfer. (Id.); see Office Depot, Inc., 2016 WL 10932510, at *6 ("[T]he Court notes that the Southern District of Florida is statistically far more efficient than the Western District of New York in processing cases, also cutting against transfer.").

Nor does Allife's assertion that it almost exclusively performed work for Ideal Protein in Illinois, (Doc. # 24-1), indicate that this case is a localized controversy that should be decided in Illinois despite the valid forum selection clause. Furthermore, even if this case were transferred to Illinois, this case will be governed by Florida law. (Doc. # 8-1 at 17). Therefore, this Court is more at home with the relevant law than the Northern District of Illinois.

In short, Allife has not shown that this is an exceptional case in which the public-interest factors favor transfer to the Northern District of Illinois. Therefore, the Court denies the Motion to Transfer.

## IV. Conclusion

The Court may exercise personal jurisdiction over Allife. Furthermore, transfer to the Northern District of

17

Illinois — which is not the forum designated in the valid forum selection clause — is unwarranted. Therefore, the Court denies Allife's Motion. Allife's Answer to the Complaint is due within fourteen days of the date of this Order.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Allife Consulting, Inc.' Motion to Dismiss for Lack of Personal Jurisdiction, or Motion to Transfer Venue (Doc. # 24) is **DENIED.** The case will proceed in this Court. Allife's Answer to the Complaint is due within 14 days of the date of this Order.

**DONE and ORDERED** in Chambers in Tampa, Florida, this <u>4th</u> day of June, 2019.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE